AMERICAN NAT. INS. CO. v. BLYSARD. (No. 7613.)

(Court of Civil Appeals of Texas.   Galveston. Nov. 21, 1918.   Rehearing Denied Dec. 5, 1918.)

1. APPEAL AND ERROR ⬥742(2) — ASSIGNMENTS OF ERROR—SUFFICIENCY.

In an action on a life policy tried to the court, an assignment of error presented as a proposition held not sufficient, because including numerous errors in one assignment, to call in question any of the fact findings of the court, though sufficient to raise the question of law whether the facts found showed delivery of the policy and payment of the first premium which were required to make it a binding obligation.

2. INSURANCE ⬥136(1) — POLICY — DELIVERY.

Where neither the application nor the policy made delivery by an agent of the insurer a condition precedent to liability, and the receipt for premium paid by the applicant for insurance, which declared that no obligation was incurred until the policy should be delivered, was not given to the applicant, the contract of insurance did not require delivery of the policy to the applicant as a condition to liability.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. INSURANCE    ⟜136(1)  —  CONTRACT  —
    COMPLETION.

When an application for insurance has been made and accepted by the insurer and the assured has done all required to entitle him to receive the policy, the contract of insurance is complete, and, if the assured dies before actual delivery, the beneficiary is entitled to recover.

4. INSURANCE    ⟜186(1)  —  LIFE POLICY  —
    PAYMENT OF PREMIUM.

Where the agent writing a life policy was entitled to retain 60 per cent. of the first premium and the assured had paid with his application a sum sufficient to pay amount which the insurer was entitled to receive, *held* that, as the agent was authorized to make any arrangement with the assured he desired and the assured would have paid amount remaining due, a finding that the assured, who died before delivery of the policy, had paid the premium, was warranted.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by Mrs. Ida Blysard against the American National Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Williams & Neethe, of Galveston, and Kennerly, Williams, Lee & Hill, and Fred L. Williams, all of Houston, for appellant.

Pleasant F. Graves, of Houston, and H. L. Livingston, of Galveston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant upon a policy of insurance alleged to have been issued by appellant insuring the life of Eugene Blysard, the son of appellee, in the sum of $1,000, in favor of appellee, who was the named beneficiary in the policy. The petition declared on the policy, alleged the failure of appellant to pay the amount due thereon, and prayed for the recovery of said sum with interest, together with $120 penalty and $250 attorney's fees.

The appellant defended on the ground that the policy was never delivered and by its terms never became an obligation of the defendant, because the first premium on the policy was not paid during the insurability of the insured as required by the policy.

The case was tried in the court below without a jury, and judgment was rendered in favor of plaintiff for the sums claimed in her petition.

The material provisions of the policy sued on are as follows:

"Number 92234.                          Age 22.
"Amount $1,000.    Semiannual Premium $12.56.
"American National Insurance Company agrees to pay one thousand dollars to his mother, Ida Blysard, immediately after receipt of due proofs of the death of Eugene Blysard, the insured, while this policy is in force.
"All premiums under this policy are payable in advance at the home office or to any agent upon delivery of a receipt signed by the president, vice president, or secretary of the company.

"No officer other than those stated, and no agent, has the power to make or to modify this or any other contract of the company in any respect whatever, and the company is not responsible for, and shall not be bound by, any promise or representations made by any person other than the officers named, and then not unless said promises or representations are in writing and signed by one of the officers stated.

"If any premium or note or other obligation given for all or part of any premium or other indebtedness is not paid on or before the date when due, the liability of the company hereunder shall cease, except as otherwise provided in this policy.

"If this policy becomes a claim by the death of the insured, any remaining premiums for the current policy year will be deducted in any settlement hereunder.

"The consideration for this policy is the application herefor which is made a part of this contract and a copy of which application is attached hereto or indorsed hereon, and the payment in advance of a semiannual premium of $12.56 and the payment of a like sum on the 1st day of February for term insurance for the year ending August 1, 1916, and a payment of a like sum on or before the 1st days of August and February in every year thereafter until full premiums have been duly paid for twenty years from the date hereof or until the prior death of the insured.

"In witness whereof, the American National Insurance Company has caused this policy to be signed by its president and its secretary, this 10th day of August, nineteen hundred and fifteen.              W. L. Moody, Jr., President.
         "L. H. Collier, Secretary.
"Countersigned by A. T. Barclay, Jr., Asst. Secretary."

The material portions of the application for the policy are as follows:

"I, Eugene Blysard, hereby apply to the American National Insurance Company, Galveston, Texas, for a policy on the 20 pay non plan, for $1,000.00, with premiums of $13.50 payable semiannually in advance. * * * My age at nearest birthday is therefore 22 years. I have lived at present address 22 years. * * * I hereby further represent and agree that the statements made by me in this application are full, complete and literally true. I hereby also agree that any policy issued hereon shall not take effect until the first premium has been paid during my insurability. * * *

"I have paid to L. E. Coffman $5.00, the first annual premium on the policy applied for; on the condition that if the risk is not assumed by the company, this sum is to be returned in accordance with the provisions of conditional receipt No. ——, which I have accepted subject to the provisions thereof.
         "Dated at Houston, August 2, 1915.
                    "[Signed] Eugene Blysard."

The defendant pleaded, and the agent who took the application testified, that when he received the money which accompanied the

application, and which he testified was paid by the plaintiff, the following receipt was given her:

"No. ———.                    Aug. 2, 1915.

"Received from Eugene Blysard, $6.00 which is a deposit on account of application this day made for insurance in the above-named company. No obligation is incurred by said company by reason of this deposit, unless said application is accepted, and until a policy is delivered by an agent of the company in person to the applicant. If this application of insurance is rejected, or policy not delivered, this deposit will be returned to applicant.

"Bal. due $4.00.        L. E. Coffman, Agent.

"(Unless you receive your policy or your money is returned within 3 weeks from the date of this receipt, please notify the company, giving name of agent, amount paid, as shown on this receipt.)"

The trial judge, at the request of appellant, filed the following conclusions of fact:

"1. I find that on August 2, 1915, and ever since that date, the defendant, American National Insurance Company, was and has been a corporation organized under the laws of Texas, and doing business as alleged in plaintiffs' first amended original petition, and had and has a local office in Houston, Tex., and that on August 2, 1915, and subsequent thereto, one J. S. Harris was the superintendent and general agent of defendant company at Houston, Tex., and that L. E. Coffman was assistant superintendent and agent for defendant company at Houston.

"2. I find that Eugene Blysard was the son of plaintiffs, Ida Blysard and Levi Blysard, a single man, and on August 2, 1915, he was 21 years of age, and that on said August 2, 1915, he made written application to the American National Insurance Company, which said application is attached to and made a part of a policy, No. 29234, issued by defendant company on August 10, 1915, for a life insurance policy to be issued by defendant company, in the principal sum of $1,000, payable in the event of his death during the life of said policy to his mother, Mrs. Ida Blysard, one of the plaintiffs herein; that said Eugene Blysard was drowned August 16, 1915, until which time his insurability existed.

"3. I find that while said application stated the semiannual premium on the policy to be issued was $13.50, payable semiannually in advance, the true semiannual premium thereon was the sum of $12.56, as stated in the said policy, and that this error was made by the agent of defendant company, L. E. Coffman, in inserting the said amount of $13.50 instead of $12.56 in said application, and that said error was merely an oversight or inadvertence of said agent.

"4. I find that while said application contains the statement by the applicant that 'I have paid to L. E. Coffman $5.00, the first annual premium on the policy applied for; on the condition that if the risk is not assumed by the company this sum is to be returned in accordance with the provisions of conditional receipt No. ———, which I have accepted subject to the provisions thereof'—as a matter of fact the sum of $6 was actually paid to said Coffman as agent of defendant company by Eugene Blysard on the first semiannual premium, to wit, $6.56, when said Blysard got the policy issued in pursuance of said application.

"5. I find that said application was approved and the risk recommended to defendant company by its agent Coffman and its said superintendent at Houston, J. S. Harris, and forwarded by mail to defendant company; and that, in pursuance of said application, defendant company through its proper officers did on August 10, 1915, duly execute and issue policy No. 29234 in the principal sum of $1,000, payable in said sum to Ida Blysard, beneficiary therein, the mother of insured, and one of the plaintiffs herein; that said policy was dated back by defendant company to take effect from August 1, 1915, instead of August 10, 1915, the date of its execution and issuance; and that when so executed said policy was forwarded by defendant company to J. S. Harris, its superintendent at Houston, without any instructions, and in the usual course and practice of defendant company in such cases, to be given to the insured when called for by him or sent to him by said Coffman, and that said policy reached said Harris about the 11th or 12th of August, 1915; that said policy was taken by said Coffman on the 16th or 17th of August, 1915, to be given to the insured, and, when within a few blocks of insured's home, said Coffman learned that insured had been drowned on the 16th of August, 1915, and did not proceed further on his mission, but returned said policy to said Harris with the information he had obtained; that said Harris shortly thereafter forwarded said policy to defendant company at Galveston advising it of the death of Eugene Blysard, and inquired what disposition to make of same; that on or about August 23, 1915, said L. E. Coffman went to the home of Mrs. Ida Blysard, beneficiary in said policy, and told her that no policy had been issued on the life of Eugene Blysard, and gave her the sum of $5, stating that said sum had been paid to him by Eugene Blysard on the premium on said policy.

"6. I find that Mrs. Ida Blysard had no information as to the issuance of said policy and did not know that any policy had ever been executed or issued by defendant company, in pursuance of said application, on the life of Eugene Blysard, and did not learn that said policy had been issued until long after the death of said Eugene Blysard, and that she would not have accepted the return of the whole or any part of said premium had she known that such policy had been executed and issued by defendant company, but that she accepted the statement of said Coffman as to the facts.

"7. I find that the said J. S. Harris during his said connection with defendant company, as did also said L. E. Coffman, had a contract with defendant, under the terms of which said Harris was absolutely responsible for all first premiums upon policies sent to him as the policy in this case was sent; that, under said contract and the course of dealing and business between said Harris and defendant company, said company looked to said Harris for the payment of all first premiums on policies like that here in suit, and held him responsible for same; that, upon sending a policy to said Har-

ris, defendant company charged him in its accounts with the first premium thereon, and allowed him 30 days after dispatch to him of such policies to remit the first premium, or to return such policy in case same be not accepted by the insured for any reason, and that defendant followed said practice and so charged said Harris with the premium on dispatch of this policy, and that said Harris from time to time made remittances to defendant company for premiums so charged against him on policies sent him and theretofore delivered by him to the applicants; that the arrangement and practice between defendant company and said Harris simply amounted to said company's looking to said Harris for payment of the first premium on policies sent him without further instruction; and that defendant company was not concerned with the arrangement said Harris or his assistants made with applicants as to the payment of the first premium, in spite of the written provisions in the application that the insured agrees that 'any policy issued hereon shall not take effect until the first premium has been paid during my insurability.'

"8. I find that, in addition to said contract between defendant company and its superintendent or general agent, Harris, and said Coffman, both said Harris and Coffman were under bond, with sureties to defendant company, guaranteeing the faithful performance of their obligation under such contracts, and the payment to defendant company of all sums of money due defendant company on policies sent to said Harris.

"9. I find that, as is customary among insurance agents, said Harris and said Coffman accepted notes in payment of first premiums, extended credit therefor to applicants, and made whatever arrangement they could as to the payment of first premiums, as a practice, in order to get business for defendant company, in spite of restrictions in applications as to prepayment of first premiums, etc., and that defendant company prior to and during all of August, 1915, was aware of such practice and conduct by said Harris and Coffman, and did not object to same, and, regardless of the time of actual delivery to insured of policies, charged said Harris with the first premium and gave him 30 days to remit same.

"10. I find that, out of the first premium (semiannual) of $12.56 due on the policy issued to Eugene Blysard by defendant, the said Harris and Coffman as their commission or part of said premium were entitled to retain the sum of $7.53, or 60 per cent. of said premium, as their commission, and that in such amount of said premium the defendant company had no interest or concern, and were not entitled to have same remitted or paid to it; and, further that, under defendant company's practice with said Harris and Coffman, it was not concerned with any arrangement they might care to make with applicants as to the part of the premium which would go to said agents as their commission, and. of the first semiannual premium of $12.56 on the policy issued to Eugene Blysard, defendant company was entitled to receive as its part thereof the sum of $5.02. I find that had said policy been delivered in person to the insured during his lifetime, he would have been able to pay and would have paid any balance due on the first semiannual premium, if any;

and that had said policy been delivered personally to the beneficiary after the death of the insured, or had she known of the issuance of said policy, she would have been able to and would have paid any balance due on such first semiannual premium.

"11. I find that more than 30 days prior to the filing of suit herein plaintiffs made proper demand upon insurance company, defendant, for settlement of said policy, and that defendant company had at all times failed and refused to recognize any obligation under said policy, or to pay the beneficiary therein by reason of said policy; and I further find that plaintiffs and insured have done all things necessary and required under the terms of the contract of insurance herein sued upon and under the law to entitle the beneficiary to the sum called for in said policy.

"12. I find that the sum of $250 is a reasonable and proper fee to be allowed plaintiff's attorneys herein.

"13. I find that the agent of the American National Insurance Company did not, on the day that same bears date, to wit, August 2, 1915, or at any other time, deliver either to Eugene Blysard, or to Mrs. Ida Blysard, the receipt attached to the first amended original answer of the American National Insurance Company, and marked 'Exhibit A.'

"14. I find that the agent of the American National Insurance Company did not take up the receipt above mentioned from Mrs. Ida Blysard, after the death of Eugene Blysard, and that such receipt was never in the possession of Mrs. Blysard or the insured, Eugene Blysard.

"15. I find that the policy No. 29234, issued by defendant company on August 10, 1915, and the application in the form in which same appears copied in said policy, constituted the entire contract between Eugene Blysard and defendant company, except as modified by the arrangement between said Blysard and the agent Coffman as to the payment of any balance due on the first semiannual premium.

"16. I find that the beneficiary, plaintiff herein, had an insurable interest in the life of Eugene Blysard."

[1-3] Appellant presents only one assignment of error, which is as follows:

"The court erred in rendering judgment for the plaintiff because the undisputed evidence showed that the policy sued on by the plaintiff had never been delivered and that same did not under its terms ever become an obligation against the defendant insurance company, since the first premium was not paid during the insurability of the insured as was required by the provisions of said policy."

No proposition is submitted under the assignment, but it is submitted as a proposition. Appellee objects to our consideration of the assignment on the ground that it is not in compliance with the rules, "in that it deals with two or more distinct propositions, suggests a diversity of questions, attempts to collect into one point every point and ground on which the appeal is based."

These objections to the assignments are not wholly invalid, and the assignment is not sufficient to call in question any of the fact

findings of the trial court above set out; but we think it is sufficient to raise the question of law as to whether the facts found by the court show such delivery of the policy and payment of the first premium as were required by the policy to make it a binding obligation of the appellant. The facts found by the trial court as to the delivery of the policy and the payment of the first premium are undisputed, except as to whether the $6 paid the agent was paid by the assured or by his mother, the plaintiff herein. The finding of the court that it was paid by the assured is not assailed by any assignment presented by appellant, and, if the question was material, such finding must be accepted by us just as every fact established by the undisputed evidence must be. This is equally true as to the question of whether the receipt before set out was given by appellant's agent to appellee. The finding of the court that such receipt was not given to the appellee or to the assured must be considered by us as an established fact. This being true, the contract of insurance contains no provision requiring that the policy be delivered by an agent of the company in person to the assured in order to make it an obligation of the company. It seems to be well-settled law that, when an application for insurance has been made and accepted by the insurance company and the assured has done all required of him by the contract to entitle him to receive the policy, the contract of insurance is complete and no actual delivery of the policy is necessary to make the company liable thereon; and, if the assured in such case dies before the policy is delivered, equity will regard that as done which ought to have been done, and the beneficiary of the contract can recover thereon. Pledger v. Sovereign Camp Woodmen of the World, 17 Tex. Civ. App. 18, 42 S. W. 653; Sovereign Camp Woodmen of the World v. Dees, 45 Tex. Civ. App. 318, 100 S. W. 366; Amarillo Life Ins. Co. v. Brown, 166 S. W. 658.

[4] We also think the facts above set out show a compliance by the assured with the requirement that the first premium must be paid before the policy would become an obligation of the company. The company, as found by the trial court, had been paid all of the premium due it, and the agent was authorized to make the agreement with the assured that the balance of the premium which the agent was to have as his commission for obtaining the insurance need not be paid until the policy was delivered. The appellant had no interest in the unpaid portion of the premium. It was not liable to its agent for any compensation for obtaining the policy, but allowed him to retain 60 per cent. of the amount of the first premium and authorized him to make any arrangement he pleased with the assured as to its payment. The assured was ready, able, and willing to make the payment to the agent in accordance with the agreement, and it was not because of any default on his part that the money was not paid before his death. The beneficiary was also ready, able, and willing to pay the amount due the agent if she had been informed after the death of the assured that the application had been accepted and the policy issued before his death. It would, we think, be manifestly unjust and inequitable to permit appellant to avoid its contract for which it has received full consideration, on the ground that the written evidence of the contract which it had executed was not delivered to the assured before his death, or upon the ground that no obligation was incurred by its contract because the assured died before he was given an opportunity to comply with his agreement to pay the agent the amount due him out of the first premium; the payment of which being a matter in which, under the undisputed evidence, the appellant had no interest.

The opinion in the case of Insurance Co. v. Brown, supra, discusses both of the questions presented in this case and decided both in accordance with the views above expressed. We think that case and the authorities there cited are conclusive of these questions.

It follows that the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.