**HEMPHILL COUNTY HOME PROTECTIVE ASS'N et al. v. RICHARDSON.**
(No. 2268.)

(Court of Civil Appeals of Texas. Amarillo. June 11, 1924. Rehearing Denied June 25, 1924.)

**1. Insurance ⬉718—Member of unincorporated benefit association bound by by-laws under which he became member.**

Where application for insurance in mutual aid association, and the constitution and by-laws of the association, are by terms of certificate made a part of contract of insurance, one becoming a member impliedly agrees to be bound by all the legal acts of the majority under the compact of the articles of the association and cannot question the validity of the by-laws under which he became member.

**2. Insurance ⬉718—Person becoming member of mutual insurance company must inform himself of its by-laws which bind him.**

A member of a mutual insurance company cannot escape force of by-laws, though he may have had no actual knowledge of them.

**3. Insurance ⬉718—Statute making constitution, by-laws, and application part of contract of insurance held not to apply to mutual aid association.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 4834, making the constitution, by-laws, and application part of the contract in a fraternal benefit society, held not to apply to mutual aid association, in view of Vernon's Ann. Civ. St. Supp. 1922, art. 4859.

**4. Insurance ⬉718—Constitution and by-laws of mutual benefit societies are part of contract between association and member who is bound by them.**

Constitution and by-laws of a mutual benefit society are part of contract between association and member, and he is conclusively presumed to be bound by their provisions in so far as they affect his contract.

**5. Insurance ⬉723(2)—Answer in application to mutual aid association or fraternal benefit society binds applicant and beneficiary in absence of fraud or other equitable grounds.**

It is the duty of an applicant for membership in a mutual aid association or fraternal benefit society to read over the answers written in the application before signing, as such answer binds both the applicant and the beneficiary, in the absence of fraud or other equitable grounds.

**6. Insurance ⬉723(3, 4)—Misrepresentation of age held misstatement of material fact avoiding certificate in mutual aid association.**

Where the laws of a mutual aid association excluded membership of one over 55, deceased's answer in his application giving his age as 54 years, when in fact he was above age limit, was a misstatement of a material fact as a matter of inducement to the formation of the contract amounting to fraud and avoided the certificate both as to deceased and the beneficiary.

**7. Insurance ⬉724(2)—Past waiver by mutual aid association of age limit held not to confer rights upon subsequent certificate holder as to whom there was no waiver.**

That a mutual aid association improperly waived for a time a provision of its contract in accepting certain members over the age limit held not to obligate it to continue that practice, and conferred no right upon a subsequent certificate holder as to whom there was no waiver as to age limit.

**8. Estoppel ⬉110—Equitable estoppel must be specially pleaded.**

An equitable estoppel must be specially pleaded.

**9. Insurance ⬉724(2)—Waiver of age limit to be available to beneficiary must amount to estoppel.**

A waiver by a mutual aid association as to the age limit of one applying for insurance must, to be available to beneficiary, amount to an estoppel.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Insurance ⬅724(2)—Knowledge of officers of mutual aid association essential prerequisite to waiver.**

Knowledge on the part of officers of a mutual aid association was an essential prerequisite to waiver of age limit.

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Suit by Mrs. Elizabeth Richardson against the Hemphill County Home Protective Association and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered for defendants.

Sanders & Jennings, of Canadian, for appellants.

Hoover, Hoover & Willis, of Canadian, for appellee.

HALL, C. J. The appellee, the beneficiary in a certificate of membership issued to her husband, W. C. Richardson, filed this suit against the appellant association, an unincorporated local mutual aid association, naming as codefendants all of the officers and members of the board of directors, praying for judgment against the association and against the officers and directors individually and as officers for the amount of the certificate, and further praying for a mandamus to compel the officers to assess the members of the association for the purpose of paying the amount due upon the certificate of membership. She alleged that the certificate had been issued to her husband on July 2, 1921; that he died December 11, 1922, while in good standing in the association. She set out the terms of the certificate entitling her as the beneficiary to recover the sum of $1,000. She further alleged that the association was an unincorporated concern; that its officers and directors were in law partners and liable pointly and severally to pay her the amount of her certificate; that she had made demand in writing under V. S. C. S. art. 4746, as a prerequisite to her right to claim 12 per cent. damages and attorney's fees; that she had employed attorneys at the price of $250, to represent her, which amount was a reasonable fee, and had assigned to them an interest in the claim to that extent. The certificate of membership issued to her husband, W. C. Richardson, was attached to the petition as an exhibit. It is dated July 2, 1921, at Canadian, Tex., and recites:

"That W. C. Richardson is this day admitted as a member of the Hemphill County Home Protective Association, subject to the following conditions: (1) That his membership is based upon his application, which application is filed in the office of the Hemphill County Home Protective Association, and made a part of his contract and in accordance with the constitution and by-laws of this association."

Further stipulations relate to the payment of assessments and the payment to Elizabeth Richardson, his wife, the sum of $1 for each member in good standing at the time of his death, and recites that the certificate is subject to the constitution and by-laws of the association. The acceptance of the certificate, subject to the conditions set out therein, was signed by the insured, W. C. Richardson.

The defendants answered, denying under oath the allegation of partnership, and alleged that the insured misrepresented his age in his application for membership, stating that his. age was 54 years when in fact he was 65 years of age; that the age limit for membership in the association was 55 years, as fixed by the constitution; and that the insured was not eligible to membership either under the constitution of the association or of the laws of the state of Texas governing such associations. It is further alleged that the representation as to the age of the insured was a warranty; that the certificate was issued in good faith, believing that the statements in the application were true; that the association never learned that the insured had misstated his age until after his death and that $19, being the amount which insured had paid into the association, was tendered to the plaintiff and deposited in the registry of the court. By a supplemental petition the plaintiff denied that the insured had executed the application or made any false representations; and further denied that any by-law of the association limited the age of members to 55 years; that the board of directors, in the exercise of their powers, had waived the provisions of the constitution with reference to age, not only as to the deceased Richardson, but at various other times had accepted members and issued certificates to others whom they knew to be over 55 years of age; that they had accepted other members whose ages were not stated and some whose ages were incorrectly stated in their application, and had accepted dues from all such members and paid out on certificates of deceased members whose ages were above the constitutional limit; that in point of fact the association had no age limit, but had accepted members promiscuously without reference to age and had accepted members where it was obvious to any person who would see and observe the applicant that his age was bound to be above the constitutional limit; that such officers were charged with knowledge that such persons were over the constitutional age; that on June 1, 1918, the directors at a regular meeting passed and recorded upon the minutes a resolution raising the age limit to 60 years. The appellant filed a supplemental answer, containing a general demurrer and several special exceptions, a general denial, and also specially denied that the officers ever know-

ingly issued certificates to persons over the constitutional age limit.

Article 7, § 1, of the constitution, referred to in the pleadings, provides:

"Any white person between the ages of eighteen and fifty-five, of good character shall be eligible to membership."

The case was submitted to the jury upon special issues, and which the jury answered as follows:

"(1) On July 1, 1921, the association was maintaining and adhering to an age limit of 55 years in accepting as members those who applied for insurance in the association. (2) At the time Richardson applied for and secured insurance the association was not knowingly accepting and insuring persons older than 55 years. (3) Richardson did not represent to R. G. Wood that he was only 54 years of age. (4) R. G. Wood knew that Richardson was more than 55 years of age at the time Richardson applied for insurance. (5) That the association so conducted its affairs in accepting members that W. C. Richardson, at the time he applied for insurance, believed and relied on such conduct as entitled one over 55 years of age to become a member and receive insurance."

In response to special issues requested by the defendant, the jury found:

"(1) That on July 1, 1921, the association was not accepting members as old as W. C. Richardson was at that time. (2) That on July 1, 1921, the association was maintaining and adhering to an age limit of 55 years, including the fifty-fifth year. (3) That the officers of the association, acting in good faith, believed that Richardson's age, as given in the application, was true and issued the certificate on the faith of such statement in the application."

From a judgment for Mrs. Richardson, based upon said finding, the matter is before us for review.

The jury's finding, if supported by the evidence, established these facts: (1) That the officers of the association were not knowingly issuing certificates of membership to applicants who were over 55 years of age, and did not issue the certificate in question with knowledge that Richardson was over said age; (2) that Richardson believed that a certificate issued to him would be valid; (3) that he did not misstate his age to the agent Wood; (4) that Wood knew Richardson was over the age limit when he received the application. The effect of the verdict is that both the association and Richardson have acted in good faith, and that the fraud, if any, in having the association issue a certificate to an applicant over the age limit, is attributable to the agent Wood.

[1] The first question to be considered is: Shall Mrs. Richardson be bound by the constitutional provision limiting the age of members to 55 years? What is termed "the application" in this case is a meager affair. It is a slip of paper about two inches square, containing the following words, with a blank after each:

"Date ———. Age ——. Address ———. Occupation ———. Beneficiary ———. Family physician ———. I am in good health ———. Applicant ———."

Oral testimony introduced in connection with it shows that when filled out it was accepted by the association and formed the basis for the issuance of the certificate. This application is, by express terms of the certificate, made a part of the contract, and by express reference in the certificate the constitution and by-laws are also a part of the contract.

[2] It is said in 1 Bacon, Benefit Societies (3d Ed.) § 81:

"The by-laws of a society are binding upon all of the members and all are conclusively presumed to know them. The Supreme Court of Indiana says: 'One who becomes a member of such an organization is chargeable with knowledge of its laws and rules and is bound by them. He cannot be ignorant of them, nor can he refuse obedience to them unless, indeed, they are illegal or require the performance of acts which the law forbids. By-laws not in themselves illegal and not requiring the performance of acts contrary to law, must, therefore, be deemed binding upon all persons who become members.' The reason of this rule is that by becoming a member one impliedly agrees to be bound by all legal acts of the majority under the compact of the articles of the association, and a member cannot question the validity of the by-laws under which he became a member. In a recent case the Supreme Court of Indiana said: 'A person who becomes a member of a mutual insurance company assents to the by-laws under which he acquires a membership and he cannot afterwards successfully assail their validity on the ground that they were not regularly adopted. * * * A person who has voluntarily become a member of a corporate body cannot object that the corporation had no power to make a by-law.' One of the duties of a person who becomes a member of a mutual insurance company is to inform himself of its by-laws, and he cannot escape their force although he may have had no actual knowledge of them. A very strong application of this rule was made in a mutual insurance company case in which Chief Justice Gibson declared that without such a rule mutual companies could not exist. In the case of Miller v. Hillsborough Mutual Fire Insurance Company the general doctrine was carried very far, the court saying: 'But it is clear that a member of the company is chargeable with notice of all of the by-laws of the company and of the conditions of insurance adopted by the company whether contained in the by-laws or in resolutions.'"

[3] V. S. C. S. art. 4834, provides:

"Every certificate issued by any such society shall specify the amount of benefit provided thereby, and shall provide that the certificate, the charter, or articles of incorporation (or, if,

a voluntary association, the articles of association), the constitution and laws of the society, and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement between the society and the member, * * * and any changes, additions or amendments to said charter or articles of incorporation, or articles of association, if a voluntary association, a constitution or laws duly made or enacted subsequent to the issuance of the benefit certificates shall bind the member and his beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership."

There seems to be no title or even chapter of the Texas Statutes relating specifically to local mutual aid associations, and while article 4834 is a part of title 71, chapter 7, relating to fraternal benefit societies, we think it is broad enough in its provisions to apply to the appellant. V. C. S. (1922 Suppl.) art. 4859, in terms describes the appellant association and denominates it a "local mutual aid association," and exempts it from the provisions of chapter 7, provided said local mutual aid association "shall plainly state upon its certificates, applications and all advertising matter, in a conspicuous manner, that said association is a local mutual aid association." The certificate contains such a statement, but the application does not. The record is silent as to whether such statement appears upon its advertising matter. A careful consideration of article 4859 convinces us that it was intended by the Legislature to exempt local mutual aid associations from the burdens and duties imposed by chapter 7 upon fraternal benefit societies incident to monthly meetings, form of government, payment of benefits, investment of funds, etc., and the rule making the constitution, by-laws, and application a part of every contract, as is provided by article 4834, is not abrogated, as it applies to associations like appellant. We are therefore of the opinion that under these circumstances article 4834 is applicable to this case.

[4] In any event, it is the general law that the constitution and by-laws of mutual benefit societies are a part of the contract between the association and the member, and that every member who receives a certificate of membership is conclusively presumed to be bound by the provisions of the constitution and by-laws which affect the validity of his contract. The courts of Texas have uniformly so held in cases where either fraternal benefit societies or local mutual aid associations are parties litigant. Splawn v. Chew, 60 Tex. 534; Pledger v. Business Men's Association (Tex. Civ. App.) 198 S. W. 810; United Moderns v. Colligan, 34 Tex. Civ. App. 173, 77 S. W. 1032; Brotherhood of Railway Trainmen v. Cook (Tex. Civ. App.) 221 S. W. 1049; M. W. A. v. Owens (Tex. Civ. App.) 130 S. W. 858; Carter v. Sovereign Camp, W. O. W. (Tex. Civ. App.) 220 S. W. 239; Sergeant v. Goldsmith Dry Goods Co., 110 Tex. 482, 221 S. W. 259; Grand Lodge A. O. U. W. v. Schwartz (Tex. Civ. App.) 205 S. W. 156; Haywood v Grand Lodge of Texas, K. P. (Tex. Civ. App.) 138 S. W. 1194; Sovereign Camp, W. O. W., v. Nigh (Tex. Civ. App.) 223 S. W. 291.

[5] It is the duty of an applicant for membership in an association of this kind to read over the answers written in his application before signing it, and in the event of a failure to do so both the applicant and the beneficiary, in the absence of fraud or other equitable grounds, are bound by the answers so made. Sovereign Camp, W. O. W., v. Lillard (Tex. Civ. App.) 174 S. W. 619; Sovereign Camp, W. O. W., v. Rodriguez (Tex. Civ. App.) 249 S. W. 266.

[6] The misrepresentation in the application as to Richardson's age is material. If in fact he was over 55 years of age, he could not become a member. It goes to the very foundation of the contract. Whether it is made a warranty or a condition is not important, since it is the misstatement of a material fact as a matter of inducement to the formation of the contract amounting to fraud in law and avoids the certificate, both as to the assured and the beneficiary. Collins v. United Brothers of Friendship & Sisters of the Mysterious Ten (Tex. Civ. App.) 192 S. W. 800; Modern Order of Prætorians v. Hollmig (Tex. Civ. App.) 105 S. W. 846; 1 A. L. R. 459–467, note; Cooley's Briefs on Insurance, vol. 3, §§ 2023, 2024; Id., vol. 6 (Suppl.) §§ 2023, 2024; 1 Bacon, Benefit Societies (3d Ed.) § 225.

[7] There is evidence showing that when the appellant association was first organized, the officers did waive the age limit for a time and knowingly accepted some members over the age of 55 years; but there is sufficient evidence to support the jury's finding that this practice had ceased when Richardson's application was received, and that the officers acted in good faith in accepting his application, which stated his age to be 54. The fact that the association had, through its officials, improperly for a time, waived a provision of its contract in accepting certain members over the age limit, in no wise obligated the association or the officers to continue to violate this constitutional provision in the future, and confers no right upon a subsequent certificate holder as to whom the jury found there had been no such waiver.

[8-10] The elements of equitable estoppel are not pleaded by appellee. She does not allege that Richardson knew of the custom, if any, of the association and its officers, to accept members who were overage; nor is it alleged that relying upon that fact he ap-

plied for membership and had paid fees and assessments. An equitable estoppel must be specially pleaded. Ross v. Moskowitz, 100 Tex. 434, 100 S. W. 768; Reed v. Robertson, 106 Tex. 56, 156 S. W. 196. Waiver, to be available to appellee in this case, must amount to an estoppel, and this is not shown. The finding of the jury that the association did not know that Richardson was overage precludes the idea of a waiver, since knowledge on the part of the officers of the association is an essential prerequisite to waiver.

There are numerous other assignments which, in view of the conclusions we have above announced, it becomes unnecessary to consider.

For the reasons stated, the judgment is reversed and is here rendered for the appellant.

BOYCE, J. I do not concur in the conclusion that the provisions of article 4834, Revised Statutes, are applicable to mutual aid associations. See article 4859, Vernon's Ann. Civil Statutes, 1922 Suppl. However, I concur in the disposition of the case as placed on other grounds stated in the opinion.

RANDOLPH, J. I concur with Judge BOYCE.